**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

UNITED STATES OF AMERICA,

              Plaintiff,

    vs.

JOSE LUIS REYNALDO REYES-CASTILLO,
*et al.*,

              Defendants.

Case No.: 2:19-cr-00103-GMN-MDC

**ORDER DENYING MOTION FOR MISTRIAL**

Pending before the Court is the Motion for Mistrial, (ECF No. 529), filed by Defendant Reyes-Castillo.  The Government filed a Response, (ECF No. 537).

For the reasons discussed below, the Court DENIES Defendant Reyes-Castillo's Motion for Mistrial, (ECF No. 529).

I.     **<u>BACKGROUND</u>**

On February 25, 2025, a federal grand jury returned a Third Superseding Indictment ("Indictment"), (ECF No. 223), charging Defendants Jose Luis Reynaldo Reyes-Castillo, David Arturo Perez-Manchame, Joel Vargas-Escobar, and Alexander De Jesus Figueroa-Torres[1] with 34 counts consisting of various interrelated offenses in furtherance of a criminal enterprise: the Mara Salvatrucha gang, commonly known as MS-13. (*See generally* Indictment, ECF No. 223). The charged offenses include 18 U.S.C. § 1962(d) (RICO Conspiracy), § 1959(a)(1) (Murder in Aid of Racketeering); § 1959(a)(1) (Kidnapping in Aid of Racketeering), § 1959(a)(5) (Attempted Murder in Aid of Racketeering); § 924(c)(1)(A) (Using or Carrying a Firearm During a Crime of Violence); § 924(j) (Causing Death Through the Use of a Firearm); and § 2

---

[1] Defendant Alexnader Figueroa-Torres pleaded guilty to counts 1–4 of the Indictment on January 21, 2026. (*See* Change of Plea Mins., ECF No. 365).

(Aiding and Abetting). (*See generally id.*).  A jury trial commenced in this case on March 23, 2026. (Mins., ECF No. 430).

On April 28, 2026, during direct examination of Government witness Josue Diaz-Orellana ("Diaz"), Defendant Reyes-Castillo made an oral motion for a mistrial based on the following exchange:

> **The Government:** Did you ever, either at that point or some other point, have a conversation with [Reyes-Castillo] about why he killed the way he killed?
>
> **Diaz:** That he had been doing it since Los Angeles.  He had the same way of killing in Los Angeles, in Fresno, and he wanted to do it also here in Las Vegas.

(Tr. 4/28/26 10:10–15, ECF No. 522).  Counsel for Reyes-Castillo immediately objected, and at a sidebar, argued that Diaz's testimony regarding uncharged murders in Los Angeles should be excluded under both Federal Rule of Evidence ("FRE") 404(b) and 403, and moved for a mistrial. (*Id.* 10:22–11:3).   The Government explained that they did not plan on eliciting testimony regarding murders in Los Angeles and agreed that Diaz's answer should be stricken. (*Id.* 11:9–11).

The Court sustained Reyes-Castillo's objection, but deferred ruling on his oral Motion for Mistrial. (*Id.* 11:18–25).

> **The Court:** All right.  We're back on the record.  I am going to sustain the objection.  So I will ask [the Government] to rephrase the question and redirect the witness.  And I'm going to strike the answer that was provided by the witness.
>
> So I'm instructing the jury that you are to disregard the answer.

(*Id.* 12:3–8).  Reyes-Castillo thereafter filed a written Motion for Mistrial. (Mot. Mistrial, ECF No. 529).  In that Motion, Reyes-Castillo identifies another statement from Diaz recounting a conversation with "City Boy," an MS-13 member who ran the MacArthur Park clique of MS-13:

**Diaz:** And City Boy sort of mentioned to me when we were on our way close to the apartment that they had stabbed somebody, that they had left them inside a suitcase.

(Tr. 4/28/26 31:21–23).  Reyes-Castillo explains that he chose not to object to this testimony in court "so as not to highlight this inadmissible testimony" which he contends "implicate[s] Reyes-Castillo indirectly." (Mot. Mistrial n. 1).  Nonetheless, Reyes-Castillo avers, this testimony "adds to the prejudice and further supports a mistrial." (*Id.*).

## II.    LEGAL STANDARD

Courts have the power to declare a mistrial when, "taking all circumstances into consideration, there is a manifest necessity for the act, or the ends of justice would otherwise be defeated." *United States v. Escalante*, 637 F.2d 1197, 1202 (9th Cir. 1980) (quoting *United States v. Klein*, 582 F.2d 186, 190 (2d Cir. 1978)) (internal quotation marks omitted).  When evidence is heard by the jury that is subsequently ruled inadmissible, a cautionary instruction from the judge is generally sufficient to cure any prejudice to the defendant. *Id.* (citing *United States v. McDonald*, 576 F.2d 1350, 1356 (9th Cir. 1978)).  Indeed, "[d]eclaring a mistrial is appropriate only where a cautionary instruction is unlikely to cure the prejudicial effect of an error." *United States v. Randall*, 162 F.3d 557, 559 (9th Cir. 1998) (quoting *United States v. Valdez-Soto*, 31 F.3d 1467, 1473 (9th Cir. 1994)).  To determine the degree of prejudice suffered by the defendant, "the probative force of the inadmissible evidence must be compared with that of the admissible evidence." *United States v. Johnson*, 618 F.2d 60, 62 (9th Cir. 1980).

## III.    DISCUSSION

Reyes-Castillo argues that the testimony elicited from Diaz is inadmissible and highly prejudicial, and that the cautionary instruction given by the Court is unlikely to cure that prejudice. (*See* Mot. Mistrial 3:1–4:2).  The Government argues in response that the Court's limiting instruction was sufficient to cure any prejudice from Diaz's testimony, and that Diaz's

testimony "barely registers" compared to the significant amount of other admissible evidence detailing murders which Reyes-Castillo allegedly committed. (Resp. 4:13–5:19, ECF No. 537).

### A.      Prejudicial Effect of Diaz's Testimony

The Court begins by examining the prejudicial effect of the testimony at issue here. *See Johnson*, 618 F.2d at 62 (comparing the prejudicial effect of subject testimony with the force of the curative instruction issued by the district court); *United States v. Quincy*, 852 F.2d 1290 (9th Cir. 1988) (same).  Reyes-Castillo takes issue with two pieces of Diaz's testimony: (1) Diaz's testimony that Reyes-Castillo "had the same way of killing" in Los Angeles and Fresno, and (2) Diaz's testimony regarding a conversation with City Boy. (Mot. Mistrial 3:12–24).  The Court addresses each in turn.

First, as the Government acknowledged, Diaz's testimony that Reyes-Castillo had killed in Los Angeles and Fresno was inadmissible evidence of "other crimes, wrongs, or acts" under FRE 404, and thus had some prejudicial effect. (*See* Tr. 4/28/2026 5:11–17).  However, the reference to those alleged killings was brief, and was directly contradicted by other admissible evidence.  Specifically, as Reyes-Castillo admits, FBI Special Agent Ryan Demmon, who investigated MS-13 activity in the Fresno and Mendota areas, testified that Reyes-Castillo was not a suspect in any of the eleven murders in those areas that the FBI suspected were connected to MS-13.[2] (Tr. 4/02/2026 18:14–16, ECF No. 454).  Further, the jury has heard a substantial amount of admissible evidence regarding numerous charged murders allegedly committed by Reyes-Castillo, each involving much more detail than Diaz's brief statement here.  The prejudicial effect of Diaz's first statement is offset by these factors.

///

[2] FBI Special Agent Demmon explained that the FBI was investigating a total of twelve murders in the Mendota and Fresno areas that they suspected were tied to MS-13. (Tr. 4/02/2026 18:4–15, ECF No. 454).  Reyes-Castillo was a suspect in only one of those twelve—the murder of Abel Rodriguez. (*Id.* 18:12–15); (Mot. Mistrial 3:6–11).

Second, the prejudicial effect of Diaz's testimony that City Boy and other MacArthur Park MS-13 members had "stabbed somebody" and "left them inside a suitcase" is minimal.[3] Diaz testified that he met City Boy during a trip to Los Angeles, and briefly described a conversation between himself, City Boy, and other MS-13 members, including Reyes-Castillo:

> **The Government:** You said you went down to LA?
>
> **Diaz:** Yes.
>
> **The Government:** What happened when you got there?
>
> **Diaz:** Well, we met with other gang members there.
>
> **The Government:** And what?
>
> **Diaz:** We spoke for a while.  I showed them my weapon.  [Reyes-Castillo] showed them his.  **They** talked about the fact that they only had one .38.  And City Boy sort of mentioned to me when we were on our way close to the apartment that **they** had stabbed somebody, that **they** had left them inside a suitcase.

(Tr. 4/28/26 31:14–23) (emphasis added).  When read in light of the full exchange, Diaz's testimony asserts that *City Boy* and other MacArthur Park MS-13 members stabbed somebody and left them inside a suitcase, not Reyes-Castillo.  While Reyes-Castillo contends that this portion of Diaz's testimony is inadmissible and implicates Reyes-Castillo "indirectly," he does not explain his basis for either assertion. (Mot. Mistrial n. 1).  Thus, the Court concludes that the prejudicial effect of this portion of Diaz's testimony is very low.

## B.   Force of the Court's Curative Instruction

After sustaining Reyes-Castillo's objection on the record, the Court struck Diaz's testimony and instructed the jury to disregard his answer. (Tr. 4/28/2026 12:3–8).  Reyes-Castillo contends that this curative instruction is unlikely to cure the prejudicial effect of Diaz's testimony. (Mot. Mistrial 3:1–24) (citing *United States v. Charmley*, 764 F.2d 675, 677 (9th

---

[3] Reyes-Castillo's counsel did not object to this portion of Diaz's testimony. (Mot. Mistrial n. 1); (*see* Tr. 4/28/2026 31:19–32:6).

Cir. 1985)). Generally, when a district court strikes inadmissible testimony and instructs the jury to disregard the evidence, the Ninth Circuit has found the curative instruction sufficient to cure any prejudice to the defendant. *See*, *e.g.*, *Escalante*, 637 F.2d at 1202–03; *United States v. Nunez-Inzunza*, 41 F. App'x 124 (9th Cir. 2002) (holding that prejudicial effect of testimony that defendant "had been involved in different types of criminal activity" was cured by instruction "to disregard the improper evidence"); *United States v. Pilaski*, No. 88-1087, 1989 WL 46753, at *3 (9th Cir. Apr. 27, 1989) (holding that prejudicial effect of testimony that defendant was "a member of the Hitler youth" was cured by trial court's "instruction to the jury to disregard [the] evidence").

Here, the Court struck Diaz's testimony regarding Reyes-Castillo's activity in California and clearly instructed the jury not to consider it. (Tr. 4/28/2026 12:3–8). Notably, Reyes-Castillo does not argue that the curative instruction given by the Court was lacking—indeed, the sole case that Reyes-Castillo cites, *United States v. Charmley*, held that the district court's cautionary instruction was sufficient to cure any prejudice from inadmissible evidence elicited at trial. 764 F.2d at 677. Instead, Reyes-Castillo focuses solely on the prejudicial effect of Diaz's testimony. (*See generally* Mot. Mistrial). However, as explained above, the prejudicial effect of Diaz's testimony is offset by Special Agent Demmon's testimony that Reyes-Castillo was not a suspect in eleven of the twelve Fresno area murders, and the voluminous amount of evidence pertaining to other alleged murders presented in this trial.

Declaring a mistrial is only appropriate "where a cautionary instruction is unlikely to cure the prejudicial effect" of inadmissible testimony. *Randall*, 162 F.3d at 559 (quoting *Valdez-Soto*, 31 F.3d at 1473) (internal quotation marks omitted). Given the Court's clear instruction on the record and the diminished prejudicial effect of Diaz's testimony, the Court concludes that this is not the case here. *United States v. Minjarez*, 495 F. App'x 857, 858 (9th Cir. 2025) ("We must assume that a jury follows any curative instruction.") (citing *Johnson*,

618 F.2d at 62).  The Court thus DENIES Reyes-Castillo's Motion for Mistrial.

## IV.    CONCLUSION

**IT IS HEREBY ORDERED** that Defendant Reyes-Castillo's Motion for Mistrial, (ECF No. 529), is **DENIED.**

**DATED** this __27__ day of May, 2026.

_____
Gloria M. Navarro, District Judge
United States District Court